```
Case 3:22-cv-00449-JO-BGS   Document 1   Filed 04/05/22   PageID.1   Page 1 of 14
```

Dr. John J. Walsh
6027 Charae Street
San Diego, CA 92112
(858) 699-0845
Plaintiff in Pro-Per



**FILED**

Apr 05 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ charlest    DEPUTY

CASE NO.: **'22CV449 MMABGS**

DR. JOHN J. WALSH,

  Plaintiff,

vs.

CALIFORNIA ENERGY DEVELOPMENT INC., TIMOTHY BRYSON AN INDIVIDUAL; MICKEY NICHOLSON, AN INDIVIDUAL; EDWARD SPOONER, TRUSTEE OF THE EDWARD SPOONER LIVING TRUST OF EDWARD SPOONER; LIFE ADVANCE, LLC A NEVADA CORPORATION; CRAIG STACK, AN INDIVIDUAL; ESTATE OF JAMES ROBERTS, A DECEASED INDIVIDUAL; JASON VOLKER, AN INDIVIDUAL; PRUCO LIFE INSURANCE COMPANY, A NEW JERSEY CORPORATION; JOHN AND JANE DOES 1-10

  DefendantS.

PLAINTIFF'S FEDERAL COMPLAINT WITH FULL STATE'S EXHAUSTION OF REMEDIES;
MEMORANDUM OF POINTS AND AUTHORITIES;
DEMAND FOR FIVE-MILLION U.S. DOLLARS ($5,000,000) IN DAMAGES;
DECLARATION OF DR. JOHN J. WALSH SUBMITTED UNDER PENALTY OF PERJURY;
JURY TRIAL REQUESTED IF PERMITTED BY LAW

Now comes the plaintiff with the following lawsuit against the named and unnamed defendants. The claims are based upon the record, exhibits attached hereto, as well as the declaration of plaintiff DR. JOHN J. WALSH, which is submitted under penalty of perjury. Plaintiff requests a jury trial if permitted.

Dated this 29TH day of March, 2022        DR. JOHN J. WALSH

PLAINTIFF'S FEDERAL COMPLAINT WITH FULL STATE'S EXHAUSTION OF REMEDIES;MEMORANDUM OF POINTS AND AUTHORITIES; DEMAND FOR FIVE-MILLION U.S. DOLLARS ($5,000,000) IN DAMAGES;DECLARATION OF DR. JOHN J. WALSH SUBMITTED UNDER PENALTY OF PERJURY;JURY TRIAL REQUESTED IF PERMITTED BY LAW

## CAUSES OF INJURY

Plaintiff complains to this Court that California Energy Development Inc., (hereinafter the defendants), declares to be the owner of Defendant JAMES ROBERTS Key-Man life insurance policy and that CEDI is the only owner to the policy and the only beneficiary and no one else has any claim to this policy. Plaintiff complains that the defendants, each of them, intentionally and substantially interfered with plaintiff's finances and defendants NICHOLSON and VOLKER especially are guilty of financial elder abuse. Although defendants NICHOLSON and VOLKER made a claim of the right to the policy, they failed to realize or recognize that without the plaintiff making the two (2) years of premium payments they would not have had a policy to try and stake a claim against.

Plaintiff was harmed when the defendants committed fraud by taking from him over fifty-thousand dollars ($50,000) he had loaned them. This loan was suppose to go towards the company they were involved in, and defendant LIFE ADVANCE'S conduct throughout this whole ordeal was a substantial factor in causing the economic harm suffered by the plaintiff.

Thus, the defendants, each of them, are therefore liable for the economic harm suffered by the plaintiff as a full redress is now required to make him whole again.

CAUSES OIF INJURY

# ***STATEMENT OF FACTS***

There can be no doubt that the plaintiff, DR. JOHN J. WALSH has suffered losses due to the fraud perpetuated upon him by the defendants. Not only has he lost finances exceeding fifty-thousand U.S. dollars ($50,000), plaintiff also lost the times to spend with family during thanksgiving, Christmas, 4th of July, New Years, eve and New Years day; the numerous trips to the hospital by ambulance, the stress this event has placed upon him is not good for his fragile health.

In essence, the defendants have cause far more harm to the plaintiff's civil and constitutional rights than any man should have to bear. This is not about a mere loss of finances. To the contrary, it's about all of the after effects suffered by the plaintiff and caused by the defendants.

In addition to the fraud, the defendants committed FINANCIAL ELDER ABUSE OF A SENIOR CITIZEN. Their actions are against the law and they must be held accountable at this time.

**Elder Abuse**

Elder abuse includes: (1) physical abuse, (2) neglect or (3) financial abuse. The state of California gives special protection to elders and dependent adults from abuse under the Elder Abuse and Dependent Adult Civil Protection Act. Recognizing that "elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect those persons," the California Legislature enacted the Elder Abuse and Dependent Adult Protection Act.

## **TYPES OF ABUSE**

Elder or dependent adult abuse includes:

- Financial abuse - includes taking, appropriating, obtaining or retaining real or personal property for a wrongful use, or with intent to defraud or by undue influence.

- Physical abuse - including assault, battery, physical or chemical restraint and deprivation of food or water.

- Sexual abuse - including incest, spousal rape, and lewd acts.

- Neglect - defined as the failure of any person having the care or custody of an elder or dependent adult to exercise the degree of care that a reasonable person would exercise, including the failure to assist in personal hygiene or to provide food, clothing, shelter or medical care.

- Financial elder abuse can be committed by family members, nursing homes, or even people you don't know. In the case at bar, this financial abuse happened with people the plaintiff thought he knew. Turns out it was all a scam to take the plaintiff's money. The defendants never intended to give him any return on his loan to them. In his cause of action plaintiff has attached many exhibits that substantiate his claims beyond a reasonable doubt. Therefore, the requested relief should be granted, or at a minimum an

evidentiary hearing be conducted where all of the true facts can be placed upon the record.

- I, DR. JOHN J. WALSH declare under penalty of perjury that the fore going statements are true and correct and are made from my own personal knowledge of the events as I have described them herein. If called to testify I shall do so to the same.

Respectfully submitted,

*[signature]*

DR. JOHN J. WALSH

DECLARATION OF DR. JOHN J. WALSH
- 5 -

## STATEMENT OF FACTS

Dr. WALSH the plaintiff, was asked by TIMOTHY BRYSON and MICKEY NICHOLSON, the defendants if he wanted to invest into their company, CALIFORNIA ENERGY DEVELOPMENT. The defendants knew that the CEO JAMES ROBERTS had a thyroid problem, and it was revealed later that they knew ROBERTS had a corrective treatment at Scripps La Jolla and he had cancer. The defendants asked Dr. WALSH to invest $60,000 into their company and to pay the premiums of the $1,000,000 life insurance policy ROBERTS had for 2 years. WALSH paid those premiums for 2 years totaling $24,000.

To protect WALSH, a collateral agreement with CALIFORNIA ENERGY DEVELOPMENT was made granting Dr. WALSH one-third of the $1,000,000 policy of CEO JAMES ROBERTS. This was all based on fraud due to the illegality of ROBERTS dissolving a company improperly committing perjury in doing so. As is shown by the evidence, ROBERTS declared under penalty of perjury that "There are no assets in the dissolving of this company." And "There are no liabilities in the dissolving of this company." As is shown by the evidence this was blatant perjury. The fact that Dr. WALSH had invested his money was a liability to the company. The fact that Dr. WALSH was owed on his investment must be construed and therefore, considered as a liability

- 6 -

With the company dissolved the previous judge should not have had any jurisdiction to make a ruling on a dissolved corporation. Although the dissolution of the company was a fraudulent, it did not stop the defendants from fraudulently asking for the investments from Dr. WALSH to be made in their company. A short time later, possibly defendants NICHOLSON and VOLKER had decided to change the company name to U.S. ENERGY without consulting Dr. WALSH. They also transferred 10 percent to WALSH.

Another act of fraud was committed when defendant KANTOR signed the settlement agreement with Dr. WALSHJ in which the settlement agreement specifically stated: "HAD A HAND IN DRAFTING THE AGREEMENT." When Dr. WALSH was asked to sign the settlement agreement, he felt it was one sided and not a fair agreement at all. WALSH was told that Life Advance attorney did the drafting of the agreement.

Clearly, Dr. WALSH retained an attorney that should have had his client's best interest at the fore front of any settlement agreement, and not to partake in the actual drafting of the agreement, left his client abandoned a violation of the **Sixth Amendment**. Clearly, KANTOR. Had a duty to his

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

client to be an advocate for WALSH cause, not to allow the defendants attorney draft an agreement in which KANTOR had little if any involvement at all.

KANTOR knew and had proof that Dr. WALSH made the premium payments to the $1,000,000 life insurance policy on ROBERTS. The fact remains that without those premium payments being made by Dr. WALSH the company would have failed and we would not even be here seeking a full redress of the claims. The fact remains that Dr. WALSH had paid over $60,000, to Life Advance, and instead of the defendants making the premium payments on the policy with the money WALSH had loaned them, they instead squandered the money away and had Dr. WALSH make those payments too.

Therefore, by Rule of law, the party that makes the premium payments is ruled to be the beneficiary of the policy, especially when there is solid proof that WALSH m=is the party that made those payments. Thus, it should now be ruled that Dr. WALSH should have been awarded the $1,000,000 policy in question. At a minimum this Court should want to hold an evidentiary hearing into the claims of who actually has a right to the policy in question. To bring this case to a close, Dr. WALSH pointed out that he

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

spent over $80,000 and another $18,000 was loaned for the defendants to start up another business. Not once did the defendants use any of that fraudulent gained money to pay ROBERTS premiums which shows their intent to defraud WALSH.

The defendants fraudulent acts are also in evidence. For example, ROBERTS went to SPOONER and had asked SPOONER to get him to start a trust so that LIFE ADVANCE could then buy back the $'1,000,000 policy. ROBERTS, once he knew he was dying he pulled a lot of fraudulent moves and back room deals with the policy selling it to different party's altogether.

The fraud statute, **18 U.S.C. sec. 1344** provides the plaintiff with a stand-alone civil cause of action. Plaintiff contends that the defendants committed corporate fraud and outright fraud. In other words, FRAUD IS FRAUD, and this is a case about misrepresentations, deceit made with the intent to defraud plaintiff on a part of the million dollar policy.

Plaintiff contends that when all of the evidence is reviewed, this Court shall have overwhelming indisputable evidence that all of the defendants are guilty of violating both the State and federal statutes on fraud requiring for the plaintiff to be granted his prayers for relief.

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

## CAUSE OF ACTION

A dispute exists, and now is over many parties as to the rightful owner of the $1,000,.000 life insurance policy. Plaintiff prays that this Court order the defendants to dismiss their claims to the policy and award it to the one who made the premium payments on that policy. Defendants omitted their duty to inform the plaintiff that CEO ROBERTS was desperate to get more money from LIFE ADVANCE. They had appointed Dr. WALSH as a member of the Board, yet he ended up resigning promptly when he had serious concerns about the company. Yet, it was too late because he had already loaned the defendants money which was based on a fraudulent agreement.

This Court has the authority to rule that with respect to the priority of contractual lien as well as a contractual attorney lien for example has priority over a subsequent judgment lien. (see **Cal. Civ. Code sec 2897; BROWN v. SUPERIOR COURT (2004) 116 Cal. App. 4th 328)**. Plaintiff should be granted relief possibly in the form of a contractual charging lien which would have priority over a subsequent judgment lien. The record should show that plaintiff had a contract with the defendants in which

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

they violated, clearing the way for him to seek out a contractual charging lien against them all, contingency an accomplished fact; and the lien that would be imposed would be unopposed by a party due to their guilt in committing the fraud against Dr. WALSH. Validity is not an issue. Nor is the matter settled or time barred. The misconduct and incompetent omissions by them all about the financial condition of the company proximately caused this lawsuit because the defendants had an affirmative duty to inform plaintiff, yet they defied fiduciary duties and mandated ethics by lying to the plaintiff that there would be no negative consequences of his investment and he would see all of his investments back plus some major profits. This was farthest from the truth, giving way to this suit.

## INTENTIONAL INTERFERENCE WITH CONTRACT

CALIFORNIA EVIDENCE CODE sec. 623 makes the mis-representation binding as a contract ratifying. In an earlier hearing the defendants admitted essential terms of the contract they had with Dr. WALSH. This ius a simple case. The defendants set out a plan to bilk plaintiff out of

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

-11-

 ₄of thousands of dollars, not fearing any form of repercussions, after all ROBERTS was trying to get the policy in his name and get more money fromk LIFE ADVANCE. Not so ROBERTS left behind a $1,000,000 policy that plaintiff should now be granted as the sole beneficiary, not anyone else.

This is a case against the defendants where it is alleged and proven their misrepresentations, and deceit made with the intent to defraud the plaintiff from the onset of their dealings. Plaintiff was told he could receive $50,000, yet plaintiff's premium payments into the policy ended up meaning nothing. The fraud in this case began when CEO ROBERTS was diagnosed with thyroid problems (unknown to the plaintiff later he discovered ROBERTS had stage 4 cancer). Plaintiff had a collateral agreement, and even though ROBERTS condition showed improvement with treatment from Scripps laser treatment, defenadnt BRYSON knew ROBERTS had cancer and at that time BRYSON had asked WALSH to invest over $60,000 into their company. BRYSON knew ROBNERTS had a serious thyroid problem/cancer, but failed to inform WALSH of this prior to his large loan. Supposedly, ROBERTS was cured of his cancer by the time PRUCO issued a new policy and WALSH was told the cure would work.

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

WALSH has a collateral agreement with CALIFORNIA ENERGY in the event something happened to ROBERTS in which WALSH was promised in writing to get one-third of the $1,000,000 life insurance policy which was held by ROBERTS as a lure to get loans and investors. ROBERTS had his personal attorney represent him as the CEO'S attorney in a prior case.

None of the defendants can claim ignorance of the consequences arising from cheating the plaintiff. In California there is an expectation reasonably held that ignorance cannot be claimed when there is proof that the defendants cheated plaintiff from the onset. The fact that defendants had a well versed knowledge of latches, liens, etc., shows an individual education which indicates knowledge of the perfidious and unscrupulous dealings of the defendants and they had a statutory fiduciary duty to the plaintiff. Defenadnts do not have unclean hands in these dealings with plaintiff. These acts are prima facie showings of misconduct by the defenadnts. Thus, this case is now ripe for federal review.

**CONCLUSION**

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS

Plaintiff has overwhelmingly shown herein that (1) He should be considered the only beneficiary of the $1,000,000 policy of JAMES ROBERTS since plaintiff is the one who made the premium payments, and without those payments being made we would not even be here today; (2) That there can be nor shouod there be any dispute that plaintiff kept his agreement making the premium payments for 2 years; (3) There should be no doubr that JAMES ROBERTS committed fraud when he stated there were no assets or liabilities in the company that he was closing wheich was perjury by him; (4) The defenaents had a fiduciary duty to thr plsintiff ajnd it cannot be denied; (5) That the defendants committed unfair business practices and it was done in combination, boldly proceeded to conceal, deceive, and falsely promise to pay plaintiff back all of his investment with a profit.

Respectfully ubmitted,

*[signature: John J Walsh]*

DR. JOPHN J. WALSH
(Litigant in Pro-Per)

Dated: March 24, 2022

FEDERAL COMPLAINT TO SEEK REDRESS FOR FEDERAL VIOLATIONS COMMITTED BY DEFENDANTS